UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT,<br><br>Plaintiff,<br><br>v.<br><br>I.C. REFRIGERATION SERVICE INC., et al.,<br><br>Defendants. | Case No. 25-cv-05508-JSC<br><br>**ORDER RE: MOTION TO DISMISS**<br><br>Re: Dkt. No. 26 |

This insurance coverage dispute arises out of a construction defect action in state court. On July 1, 2025, Travelers Indemnity Company of Connecticut ("Travelers") filed a Complaint in this Court against its insureds, I.C. Refrigeration Service Inc. ("IC") and Flory Construction, Inc. ("Flory"). (Dkt. No. 1.)[1] The Complaint seeks a declaration that Travelers[2] has no duty to defend or indemnify IC and Flory in the construction defect lawsuit currently pending in Alameda County Superior Court (the "Underlying Suit"). Pending before the Court is Flory's Motion to Dismiss or, in the alternative, Motion to Stay. (Dkt. No. 26.) After carefully considering the parties' written submissions, and having had the benefit of oral argument on October 23, 2025, the Court GRANTS Flory's motion to dismiss without prejudice as to Travelers' duty to defend Flory in the Underlying Suit. The issue of Travelers' duty to indemnify is STAYED pending final resolution of the Underlying Suit.

//

//

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

[2] Travelers is not the plaintiff in the Underlying Suit, so to avoid confusion, this order avoids using the terms 'Plaintiff' and 'Defendant' when possible.

**BACKGROUND**

1. The Underlying Suit

On April 18, 2023, Flory brought the Underlying Suit in state court against "Abrams, Tribune, Oakland II, and Oakland LLC" (collectively, "Highbridge"), asserting claims for (1) foreclosure on mechanics liens, (2) breach of promissory note, (3) breach of contract, and (4) quantum meruit. (Dkt. No. 1-1 at 2.) Highbridge had contracted with Flory for construction work on Highbridge's properties in Oakland, California. (*Id.* ¶¶ 7, 11.) As part of the construction, Flory agreed to "furnish labor, materials and equipment for improvements" to Highbridge's properties. (*Id.* ¶ 11.) The project included the installation of heating, ventilation, and air conditioning ("HVAC") work. (Dkt. No. 1 ¶ 11.) Flory alleges Highbridge failed to provide payment despite Flory completing "all requested contract work . . . except to the extent prevented by [Highbridge]." (Dkt. No. 1-1 ¶ 12.)

2. Highbridge's Cross-Complaint

A couple months after Flory sued, Highbridge filed a cross-complaint against Flory claiming (1) breach of written contract, (2) fraud, (3) negligent misrepresentation, and (4) negligence "in an amount in excess of" $1.5 million dollars. (Dkt. No. 1-2 ¶¶ 10, 18, 23, 27.) Highbridge alleges at the time Flory agreed to construct the project, Flory "knew that the Property was a commercial property and was intended to be leased to various commercial occupants." (*Id.* ¶ 6.) And during construction "Highbridge told Flory multiple times that the HVAC was not properly installed and that because of Flory's failure to correct the deficiencies, Highbridge's tenants were threatening to vacate . . . and terminate their leases." (*Id.*)

In response to Highbridge's cross-complaint, Flory filed a cross-claim on November 2, 2023 against IC and others, seeking indemnity and contribution for the HVAC defects alleged in Highbridge's cross-complaint. (Dkt. No. 1-3 at 2, 3.) On April 4, 2024, Travelers accepted the tenders of both IC and Flory and appointed defense counsel in the Underlying Suit. (Dkt. No. 1 ¶¶ 19, 21.)

3. Relevant Policy Terms

Travelers issued five commercial general liability policies (collectively, the "Policy") to IC

covering October 1, 2018, through October 1, 2023. (Dkt. No. 1 ¶ 16.) Flory contends it is covered by the Policy as an additional insured. (*Id.* ¶¶ 18, 22.) The Policy provides coverage for damages due to "'bodily injury' or 'property damage' . . . caused by an 'occurrence.'" (*Id.* ¶ 17 § I (quoting ¶ 1(a)-(b)(1)).) "Property damage" is defined as:

- "Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it[.]" (*Id.* ¶ 17 § V (quoting ¶ 23(a)).)
- "Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it." (*Id.* ¶ 17 § V (quoting ¶ 23(b)).)

"Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* ¶ 17 § V (quoting ¶ 17(a)).)

The Policy also includes several exclusions that, according to Travelers, apply to the alleged damages Highbridge seeks in the Underlying Suit:

- "'[B]odily injury' or 'Property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." This exclusion would not apply liability "the insured would have in the absence of the contract" or to liability assumed in an "'insured contract.'" (*Id.* ¶ 17 § I (quoting ¶ 2(b)(1)-(2)).)
- "'Property damage' to . . . [t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations. If the 'property damage' arises out of those operations" . . . or "[the] particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." (*Id.* ¶ 17 § I (quoting ¶ 2(j)(5)-(6)).)
- "'Property damage' to 'your product' arising out of it or any part of it." (*Id.* ¶ 17 § I (quoting ¶ 2(k)).)

3

- "'Property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.' This exclusion does not apply if the damaged work or the work out of which the damages arises was performed on your behalf by a subcontractor." (*Id.* ¶ 17 § I (quoting ¶ 2(l)).)
- "'Property damage' to 'impaired property' or property that has not been physically injured," when the loss arises from a "defect, deficiency, inadequacy or dangerous condition in your 'your product' or 'your work,'" or from "a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms." (*Id.* ¶ 17 § I (quoting ¶ 2(m)(1)-(2)).)
- "Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of: (1) 'Your product'; (2) 'Your work'; or (3) 'Impaired property.'"

(*Id.* ¶ 17 § I (quoting ¶ 2(n)(1)-(3)).)

4. Travelers' Declaratory Relief Action

More than 14 months after accepting Flory's defense, Travelers filed the instant declaratory relief action seeking a judicial determination of its duty to defend and indemnify Flory as an additional insured under IC's policy. (Dkt. No. 1.) The Underlying Action remains ongoing. Trial was first set for January 16, 2025, continued to March 14, 2025, then September 25, 2025, and is now scheduled for February 13, 2026. (Dkt. No. 28-1 ¶ 1.) Travelers continues to defend Flory and IC under a reservation of rights while this declaratory relief action remains pending. (Dkt. No. 1 ¶¶ 19, 21.) Now pending before the Court is Flory's motion to dismiss Travelers' complaint, or alternatively stay the case pending resolution of the Underlying Suit. (Dkt. No. 26.)

**DISCUSSION**

Flory moves to dismiss Travelers' declaratory relief action for failure to state a claim, and if not, to stay this action pending the resolution of the Underlying Suit.

1. Subject Matter Jurisdiction

Before considering the merits of Flory's motion to dismiss, the Court must consider its

4

own authority to adjudicate the instant dispute. *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005). The Declaratory Judgment Act provides "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "Jurisdiction to award declaratory relief exists only in 'a case of actual controversy.'" *Wickland Oil Terminals v. Asarco, Inc.*, 792 F.2d 887, 893 (9th Cir. 1986); *see also Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994) ("We have held that this requirement is identical to Article III's constitutional case or controversy requirement."). "If a case is not ripe for review, then there is no case or controversy, and the court lacks subject matter jurisdiction." *Principal Life Ins. Co.*, 394 F.3d at 669.

A case or controversy exist when an insurer seeks a declaratory judgment on its duty to defend or indemnify, even while the underlying state action remains pending. *Kearns*, 115 F.3d at 144. Accordingly, the Complaint presents a "case of actual controversy" as required under the Declaratory Judgment Act and Article III of the U.S. Constitution. *See Armstrong World Indus. Inc. v. Aetna Cas. & Sur. Co.*, 45 Cal. App. 4th 1, 108 (1996) ("In a declaratory relief action brought before the insured's liability is established, the court cannot determine the amount of the insured's indemnity obligation," but it may decide "whether the claim is covered by the policy.").

2. The Duty to Defend

   a. Insurance Coverage Legal Principles

An insurer "faces an uphill battle from the beginning because the duty to defend in California is extensive." *Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1267 (9th Cir. 2010). "'[A] liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity.'" *Montrose Chem. Corp. v. Sup. Ct.*, 6 Cal. 4th 287, 295 (1993) (quoting *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993)) (internal citation omitted). "[And] 'the carrier must defend a suit which *potentially* seeks damages within the coverage of the policy.'" *Id.* (quoting *Gray v. Zurich Ins. Co.*, 65 Cal. 2d 263, 275 (1996)). Thus, the insured's duty to defend is excused only when "'the third party complaint can *by no conceivable theory raise a single issue* which could bring it within the policy coverage.'" *Id.* at 300 (quoting *Gray*,

5

65 Cal. 2d at 275 n.15). Whether a duty to defend exists turns on "the allegations of the underlying complaint and the terms of the policy." *Reese v. Travelers Ins. Co.*, 129 F.3d 1056, 1060 (9th Cir. 1997) (citing *Montrose*, 6 Cal. 4th at 295). "Any doubt as to whether the facts establish the existence of the defense duty must be resolved in the insured's favor." *Montrose*, 6 Cal. 4th at 299–300 (internal citations omitted). "[T]he duty to defend is broader than the duty to indemnify; an insurer may owe a duty to defend its insured in an action which no damages ultimately are awarded." *Great Am. Ins. Co. v. Sup. Ct.*, 178 Cal. App. 4th 221, 234 (2009) (internal quotation marks and citations omitted). Ultimately, "if a potential for coverage exists, there is a duty to defend . . . [and] the insurer must defend until the underlying action is resolved by settlement or judgment." *Id.*

          b.   Potential Coverage Analysis

Flory moves to dismiss the duty to defend declaratory judgment claim on the grounds Travelers cannot establish there is no potential for coverage. The Policy agrees to "defend the insured against any 'suit' seeking" "damages because of 'bodily injury' or 'property damage' to which this insurance applies." (Dkt. No. 1 ¶ 17 § I (quoting ¶ 1(a)).) It defines "property damage" as "[p]hysical injury to tangible property," and "[l]oss of use of tangible property that is not physically injured." (*Id.* ¶ 17 § V (quoting ¶ 23(a), (b)).)

The Underlying Suit seeks damages potentially covered by the Policy as a matter of law. Highbridge seeks damages based on tenants vacating and terminating their leases, which could be covered under the Policy's definition of "property damage" as a "[l]oss of use of tangible property that is not physically injured." (*Id.*) In the same vein, Flory's construction work may have caused "[p]hysical injury to tangible property, including all resulting loss of use of that property." (*Id.* ¶ 17 § V (quoting ¶ 23(a))); Dkt. No. 1-2 ¶ 10 (alleging damages "*including but not limited to*, loss of use and rents").) So, if the answer to either of those questions is "yes," it follows the Policy would cover Flory in the Underlying Suit. To put it another way, drawing all reasonable inferences in Travelers' favor, the Underlying Suit's complaint does not establish there is no potential for coverage. Indeed, Travelers' opposition appears to concede as much as it argues the damages sought by Highbridge against Flory may not constitute "property damage" or "bodily

6

1  injury" because the issue is "to be determined." (Dkt. No. 28 at 9.)  The damages may not be
2  covered, but they also may; because they may, Travelers has a duty to defend.  *See Great Am. Ins.*
3  *Co.,* 178 Cal. App. 4th at 235 (in an insurer's declaratory relief action seeking an order of no duty
4  to defend, "the insured need only show that the underlying claim may fall within policy coverage;
5  the insurer must prove it cannot").  Since as the record now stands Travelers has a duty to defend,
6  its declaratory judgment claim seeking an order of no duty to defend fails and the motion to
7  dismiss that claim must be granted.
8        In *Travelers Prop. Cas. Co. of Am. v. Salesforce.com*, 2021 WL 1376575 (N.D. Cal. Apr.
9  13, 2021), for example, Travelers similarly sought a declaration of no duty to defend.  The court
10 granted the insured's motion to dismiss and held Travelers had a duty to defend its insured
11 because Travelers could not "conclusively establish that the nature of the lawsuit and the claims
12 that may be brought in the lawsuit fall outside the scope of coverage."  The Ninth Circuit affirmed.
13 *Travelers Prop. Cas. Co. of Am. v. Salesforce.com*, 2024 WL 4286968 (9th Cir. Sep. 25, 2024).
14 The same result is required here because Travelers cannot, and indeed does not even attempt to,
15 "conclusively establish that the nature of the [underlying] lawsuit and the claims that may be
16 brought in the lawsuit fall outside the scope of coverage."  *Travelers Prop. Cas. Co. of Am.*, 2021
17 WL 1376575 at *1.
18       Travelers' insistence "the damages sought by Highbridge Oakland against Flory in the
19 Underlying Action are not property damages, but economic damages" and so are not covered by
20 the Policy is unpersuasive.  (Dkt. No. 28 at 8; *see also id.* at 9 (the "damages arising out of the
21 alleged failures of the HVAC system . . . are [that] Highbridge Oakland's tenants were threatening
22 to vacate the property and terminate their leases (i.e., economic damages)").)
23       First, as explained above, the underlying complaint cannot be read as seeking *only*
24 damages from the termination of the tenants' leases.  The allegations describe harm potentially
25 covered under the Policy's definition of "property damage" as a "[p]hysical injury to tangible
26 property, including all resulting loss of use of that property."  (Dkt. No. 1 ¶ 17 § V (quoting ¶
27 23(a)).)  For example, Highbridge alleges Flory breached the construction contract by "failing to
28 perform the work in a good and workmanlike manner," "in accordance with the standard of care in

the industry," and "to install products that were fit for the purpose for which they were intended." (Dkt. No. 1-2 ¶ 9(a)-(c).) Further, the underlying complaint does not identify whether those defects caused damage beyond Flory's defective work, other than alleging damages "including but not limited to, loss of use and lost rents." (*Id.* ¶ 10.) Given the broad nature of Highbridge's claimed damages, it is possible Flory's failure to properly install the HVAC system caused "physical injury to tangible property." Moreover, even if the allegations' vagueness makes it doubtful whether there is a potential for coverage based on a physical injury to Highbridge's property, such doubt still must be resolved in the insured's favor. *Horace Mann*, 4 Cal. 4th at 1081 (internal citation omitted); *see also Aetna Cas. & Sur. Co., Inc. v. Centennial Ins. Co.*, 838 F.2d 346, 350 (9th Cir. 1988) (explaining that in California "the duty to defend is so broad that as long as the complaint contains language creating the potential for liability under an insurance policy, the insurer must defend an action against its insured . . .") (internal citation omitted).

Second, the Policy covers "[l]oss of use of tangible property that is not physically injured." (Dkt. No. 1 ¶ 17 § V (quoting ¶ 23(b)).) Travelers has not established the underlying complaint cannot be construed to allege loss of use of Highbridge's property due to a non-physical injury to the property, namely, the issues with the HVAC work. In *Thee Sombrero, Inc. v. Scottsdale Ins. Co.*, 28 Cal. App. 5th 729 (2018), for example, a property owner argued a fatal shooting caused by its security company's negligence led to revocation of its permit to operate a nightclub. *Id.* at 731–32. The property owner claimed this loss of use qualified as "loss of use of tangible property that is not physically injured." *Id.* at 734. The trial court disagreed, finding the claim purely economic, but the Court of Appeals reversed, holding the loss of use of the property, even if economic, constituted "property damage." *Id.* at 742–43. As in *Sombrero*, Highbridge's cross-complaint alleges Flory's defective HVAC installation caused tenants to threaten to vacate and terminate their leases (Dkt. No. 1-2 ¶ 6), depriving Highbridge of its commercial property's use and resulting in more than $1.5 million in damages. (*Id.* ¶ 10.) Thus, there is a *potential* Highbridge's claimed loss of use qualifies as "property damage" under the Policy. *See Montrose*, 6 Cal. 4th at 295.

Travelers' reliance on *F & H Construction v. ITT Hartford Ins. Co.*, 118 Cal. App. 4th 364,

8

371–72 (2004) and *N.H. Ins. Co. v. Vieira*, 930 F.2d 696, 698–99 (9th Cir. 1991) for the proposition "property damage" does not include "economic items of consequential damages such as loss of use, loss of expected profits, and diminution in value" (Dkt. No. 28 at 9 n.1), is unavailing. In *F & H Construction*, "[t]he only damages alleged by F & H [were] the costs of modifying the pile caps and the lost bonus for early completion of the project." 118 Cal. App. 4th at 373. And in *Vieira*, the court primarily focused on whether diminution in value qualified as "physical injury to or destruction of tangible property." 930 F.2d at 698 (internal quotation marks omitted). Here, in contrast, Highbridge alleges damages "including but not limited to, loss of use and lost rents" (Dkt. 1-2 ¶ 10), which potentially qualify as a "loss of use of tangible property that is not physically injured" given the complaint's other allegations. Moreover, Travelers has not alleged Highbridge cannot amend its complaint to include additional damages covered by the Policy. *See Scottsdale Ins. Co. v. MV Transp.*, 36 Cal. 4th 643, 654 (2005) ("[T]hat the precise causes of action pled by the third-party complaint may fall outside policy coverage does not excuse the duty to defend where, under the facts alleged, reasonably inferable, or otherwise known, the complaint could be fairly amended to state a covered liability.") (internal citations omitted).

Accordingly, Highbridge's asserted damages in the Underlying Suit present a potential claim for "property damage" as defined under the Policy, triggering a duty to defend.

### c. The Policy Exclusions

Travelers also alleges several Policy exclusions preclude coverage. (Dkt. No. 1 ¶ 17 § I ¶ 2(b), (j), (k), (l), (m), (n).) While courts "generally interpret the coverage clauses of insurance policies broadly, protecting the objectively reasonable expectations of the insured," policy exclusions must be "interpretated narrowly against the insurer." *AIU Ins. Co. v. Sup. Ct.*, 51 Cal. 3d 807, 822 (1990); *see also Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1032 (9th Cir. 2008) ("The burden is on . . . the insurer to establish that the claim is specifically excluded.") (internal quotation marks and citation omitted); *GGIS Ins. Services, Inc. v. Sup. Ct.*, 168 Cal. App. 4th 1493, 1507 (2008) (explaining an exclusion "must be clear and unmistakable to be given effect"). For the reasons discussed above, the Policy may potentially cover the damages

Highbridge alleges in the Underlying Suit. And Travelers' opposition does not contend any of its cited exclusions apply as a matter of law such that it has no duty to defend; instead, it merely notes the damages "[are] to be determined." (Dkt. No. 28 at 9.) So, Travelers has failed to meet its burden to conclusively show the Policy's exclusions preclude coverage for all Highbridge's claims. *See Atlantic Mutual Ins. Co. v. J. Lamb, Inc.*, 100 Cal. App. 4th 1017, 1039 (2002) ("[A]n insurer that wishes to rely on an exclusion has the burden of proving, through conclusive evidence, that the exclusion applies in all possible worlds.").

Travelers fails to show the Policy's exclusions bar any potential coverage for claims against Flory as a matter of law. Therefore, Travelers has a duty to defend Flory in the Underlying Suit and its declaratory judgment claim seeking a declaration of no duty to defend must be dismissed.

### 3. The Duty to Indemnify

Travelers also seeks a declaration it owes no duty to indemnify Flory in the Underlying Suit. (Dkt. No. 1 ¶ 24.) Under California law, the duty to indemnify "is only determined when the insured's underlying liability is established . . .." *Ringler Assocs. Inc. v. Maryland Cas. Co.*, 8 Cal. App. 4th 1165, 1185 (2000). "Although an insurer may have a duty to defend, it ultimately may have no obligation to indemnify, either because no damages were awarded in the underlying action against the insured, or because the actual judgment was for damages not covered under the policy." *Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal. 4th 645, 659 n.9 (citing *City of Laguna Beach v. Mead Reinsurance Corp.*, 226 Cal. App. 3d 822, 830 (1990)). The Court is "unable to determine the amount of the insurer's indemnity obligation." *Id.* Accordingly, it is appropriate to stay the proceedings regarding Travelers' duty to indemnify pending resolution of the Underlying Suit. *See Texas v. U.S.*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.") (internal quotation marks and citations omitted).

## CONCLUSION

For the reasons discussed above, Flory's Motion to Dismiss is GRANTED as to Traveler's duty to defend Flory in the Underlying Suit. The dismissal is without prejudice as circumstances

may develop in the future which would eliminate any duty to defend going forward.  Further, the issue of Travelers' duty to indemnify is STAYED pending final resolution of the Underlying Suit.

The parties shall file a written update on the status of the Underlying Suit by April 3, 2026.

This Order disposes of Docket No. 26.

**IT IS SO ORDERED.**

Dated: November 10, 2025

*Jacqueline Scott Corley*
JACQUELINE SCOTT CORLEY
United States District Judge